IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANTOINE L. HENDERSON,

    Plaintiff,                       No. CIV S-09-2779 DAD P

    vs.

K. PURCELL, et al.,                  <u>ORDER AND</u>

    Defendants.              <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

        Plaintiff is a state prisoner proceeding pro se and in forma pauperis with an action filed pursuant to 42 U.S.C. § 1983. On February 11, 2011, defendants Fernandez, Purcell, and Kadevari filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has not filed any opposition to that motion.[1]

/////

---

[1] On April 4, 2011, the undersigned issued an order to show cause, ordering plaintiff to file an opposition to defendants' motion for summary judgment and warning plaintiff that failure to do so could "be deemed a waiver of any opposition to the granting of the motion." Plaintiff responded to the court's order by requesting a copy of defendants' motion claiming that he had never received it. On the following day defendants filed a response to plaintiff's request and informed the court that they had voluntarily re-served a copy of their motion for summary judgment on plaintiff. On May 6, 2011, the court discharged its order to show cause and ordered plaintiff to file his opposition to defendants' motion within thirty days of the date of that order. Plaintiff still has not filed an opposition to defendants' motion. Accordingly, dismissal of plaintiff's complaint pursuant to Federal Rule of Civil Procedure 41(b) would be justified.

1

**BACKGROUND**

Plaintiff is proceeding on an amended complaint against Physician's Assistant Fernandez, Nurse and Program Manager Purcell, and Dr. Kadevari. Therein, plaintiff complains about the following conditions of confinement at the Solano County Jail ("SCJ") that he allegedly experienced while incarcerated there as a pretrial detainee.[2] On November 14, 2008, plaintiff was booked at the SCJ. He informed a sheriff's deputies there that he was taking medication for high blood and for an ulcer, but the deputy did not make any notations on plaintiff's intake health screening form. On the following day, plaintiff's wife delivered his medication to county jail personnel and, although he requested it numerous times and asked to see medical staff in the subsequent days, plaintiff did not receive any response to his requests. On November 21, 2008, plaintiff was transferred from the main jail to one of the two sub-facilities. On November 24, 2008, medical personnel examined him and tested him for TB. On November 28, 2008, plaintiff passed out, and a sheriff's deputy delivered him to medical staff. Between November 28, 2008, and December 18, 2008, plaintiff saw defendants Physician's Assistant Fernandez, Nurse and Program Manager Purcell, and Dr. Kadevari as well as other SCJ medical staff on at least twelve occasions. Plaintiff alleges that despite these medical appointments, his medical conditions did not improve and continued to worsen.

According to plaintiff, on December 31, 2008, his wife bailed him out of jail. The day after he was bailed out of jail plaintiff went to the hospital where he was admitted with a ruptured intestinal lining and an inflamed ulcer. Based upon these allegations, plaintiff claims that defendants violated his constitutional right to adequate medical care while incarcerated and requests monetary damages. (Am. Compl. at 3-8.)

---

[2] At all relevant times, it appears that plaintiff was a pretrial detainee. Although he does not state so explicitly, plaintiff notes that his wife "bailed" him out of the jail. In any event, as discussed herein, the Ninth Circuit Court of Appeals has determined that the deliberate indifference standard applies to such medical care claims brought by both pretrial detainees and sentenced prisoners.

# SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

1 must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome
2 of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
3 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.
4 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could
5 return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,
6 1436 (9th Cir. 1987).

7      In the endeavor to establish the existence of a factual dispute, the opposing party
8 need not establish a material issue of fact conclusively in its favor. It is sufficient that "the
9 claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
10 versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary
11 judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a
12 genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory
13 committee's note on 1963 amendments).

14      In resolving the summary judgment motion, the court examines the pleadings,
15 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
16 any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson,
17 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the
18 court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587.
19 Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to
20 produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen
21 Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.
22 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply
23 show that there is some metaphysical doubt as to the material facts . . . . Where the record taken
24 as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no
25 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).
26 /////

**OTHER APPLICABLE LEGAL STANDARDS**

I. <u>Civil Rights Act Pursuant to 42 U.S.C. § 1983</u>

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See <u>Monell v. Department of Social Servs.</u>, 436 U.S. 658 (1978); <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of <u>respondeat superior</u> and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See <u>Fayle v. Stapley</u>, 607 F.2d 858, 862 (9th Cir. 1979); <u>Mosher v. Saalfeld</u>, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See <u>Ivey v. Board of Regents</u>, 673 F.2d 266, 268 (9th Cir. 1982).

II. <u>Fourteenth Amendment and Adequate Medical and Mental Health Care</u>

Although pretrial detainees are lawfully in state custody, they are not prisoners subject to punishment by the state and are entitled to protection under the Fourteenth Amendment Due Process Clause. See <u>Bell v. Wolfish</u>, 441 U.S. 520, 537 n.16 (1979) (unlike sentenced inmates the state is not allowed to punish pretrial detainees and therefore the Due Process Clause applies). Cf. <u>Jones v. Blanas</u>, 393 F.3d 918, 933-35 (9th Cir. 2004) (the

Fourteenth Amendment standard applies to conditions of confinement when civil detainees have not been convicted of a crime). Under the Fourteenth Amendment Due Process Clause, the state may not impose conditions of confinement on a pretrial detainee that inflict punishment. See Clouthier v. County of Contra Costa, 591 F.3d 1232, 1242 (9th Cir. 2010). "The key question 'in determining whether particular restrictions and conditions accompanying pretrial detention amount to punishment in the constitutional sense of that word,' is whether the restrictions evince a punitive purpose or intent." Id. (quoting Bell, 441 U.S. at 538-39).

With respect to a claim brought by pretrial detainee that he was denied adequate medical care while incarcerated, the Ninth Circuit Court of Appeals recently clarified that "the 'deliberate indifference' standard applies to claims that correction facility officials failed to address the medical needs of pretrial detainees." Clouthier, 591 F.3d at 1242. Specifically, the Ninth Circuit explained that:

> under Bell and our cases, we must consider whether [a plaintiff] was subjected to punishment. This requires us to inquire into the subjective component of punishment, that is, whether [the defendants] acted with deliberate indifference as defined in Farmer and our cases.

Clouthier, 591 F.3d at 1243. See also Simmons v. Navajo County, 609 F.3d 1011, 1017 (9th Cir. 2010) ("Although the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment's protection against cruel and unusual punishment, applies to pretrial detainees, we apply the same standards in both cases.") (internal citations omitted).

Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835. Under the deliberate indifference standard, a person may be found liable for denying adequate medical care if he "knows of and disregards an excessive risk to inmate health and safety." Id. at 837. See also Estelle v. Gamble, 429 U.S. 97, 106 (1976); Lolli v. County of Orange, 351 F.3d 410, 418-19 (9th Cir. 2003); Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). A deliberate indifference claim predicated upon the failure to provide

6

1  medical treatment has two elements:

2          First, the plaintiff must show a "serious medical need" by
        demonstrating that "failure to treat a prisoner's condition could
3          result in further significant injury or the 'unnecessary and wanton
        infliction of pain.'"  Second, the plaintiff must show the
4          defendant's response to the need was deliberately indifferent.

5  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); McGuckin v. Smith, 974 F.2d 1050, 1059

6  (9th Cir. 1991) (an Eighth Amendment medical claim has two elements: "the seriousness of the

7  prisoner's medical need and the nature of the defendant's response to that need."), overruled on

8  other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

10  I. <u>Defendant Fernandez, Purcell, and Kadevari's Statement of Undisputed Facts and Evidence</u>

11          The defendants' statement of undisputed facts is supported by a declaration signed

12  under penalty of perjury by defendant Purcell and copies of plaintiff's medical records from the

13  SCJ.  It is also supported by a declaration signed under penalty of perjury by defense counsel

14  Varanini and copies of plaintiff's medical records from Vacavalley Hospital.  Finally, it is

15  supported by a declaration signed under penalty of perjury by medical expert, Dr. John Levin.

16          The evidence submitted by defendants Fernandez, Purcell, and Kadevari

17  establishes the following.  On November 14, 2008, plaintiff was booked at the SCJ, and a

18  sheriff's deputy generated a custody intake screening form.  The screening form indicates that

19  plaintiff reported no medical problems to custody staff.  It also indicates that custody staff did not

20  contact medical providers at the jail on plaintiff's behalf.  (Defs.' SUDF 1, Purcell Decl., Levin

21  Decl., Pl.'s Compl. Ex. A.)

22          On November 24, 2008, plaintiff had his first contact with SCJ medical providers

23  when he was administered a routine TB test.  Plaintiff at that time reported that he had a history

24  of hypertension, ulcerative colitis, and low-back pain.  Plaintiff also requested at that time to see

25  a nurse practitioner and was scheduled to see someone from medical staff at sick call on

26  /////

1  November 28, 2008.  Defendant Program Manager Purcell signed-off on plaintiff's TB
2  Assessment Form.  (Defs.' SUDF 2-4, Purcell Decl., Levin Decl.)
3              On November 28, 2008, plaintiff saw defendant Fernandez, a physician's
4  assistant, who noted that the custody intake form failed to identify or report any of plaintiff's
5  medical issues.  Defendant Fernandez also noted that plaintiff was confused about the medication
6  he had been taking before arriving at the SCJ.  Defendant Fernandez conducted a three-way
7  telephone call with plaintiff's wife and plaintiff's pharmacy to clarify what medication plaintiff
8  was to be taking.  Defendant Fernandez then prescribed the same medications for plaintiff to
9  continue at the jail and ordered that blood pressure readings for plaintiff be taken three times a
10 week to check for hypertension.  (Defs.' SUDF 5-8, Purcell Decl., Levin Decl.)
11             On December 2, 2008, defendant Fernandez saw plaintiff again.  At that time he
12 prescribed plaintiff Meclazine in response to plaintiff's complaints of dizziness.  On December
13 11, 2008, plaintiff saw SCJ nursing staff and complained of excruciating pain in the left lumbo-
14 sacral area.  Staff put a call into defendant Dr. Kadevari, and per his order, defendant Physician's
15 Assistant Fernandez gave plaintiff 10 mg of Valium in the left gluteal muscle.  On December 12,
16 2008, plaintiff complained of continued pain in his back and left leg.  He reported that the shot of
17 Valium helped, and defendant Dr. Kadevari gave a verbal order to continue plaintiff's Valium
18 and scheduled a follow-up visit for him on December 15, 2008.  On December 15, 2008, plaintiff
19 was out to court, so his follow-up visit was continued to the following day.  (Defs.' SUDF 9-12,
20 Purcell Decl., Levin Decl.)
21             On December 16, 2008, plaintiff saw defendant Fernandez and complained of
22 right leg pain stating, "feels like continuous charlie horse."  Plaintiff said that he had fallen twice
23 about three weeks ago landing on his "gluteus."  He also reported that the Valium helped reduce
24 his pain.  Defendant Fernandez ordered an x-ray of plaintiff's hip to check for any traumatic
25 orthopedic injuries and prescribed him Vicodin for pain.  On December 17, 2008, plaintiff's x-
26 ray results proved "normal."  On December 19, 2008, plaintiff saw defendant Dr. Kadevari and

1 again complained of back and leg pain.  Defendant Dr. Kadevari noted that plaintiff's x-ray was
2 normal and added Baclofen and Ultram to his pain medication.  On December 24, 2008, plaintiff
3 complained of back pain again.  Defendant Dr. Kadevari found no evidence of muscle spasm and
4 advised plaintiff to do stretching exercises.  (Defs.' SUDF 13-17, Purcell Decl., Levin Decl.)

5        On January 1, 2009, the day after he was bailed out of SCJ, plaintiff went to
6 Vacavalley Hospital complaining of "left lower back and left groin pain [for] 45 days" related to
7 a fall at the jail in November.  Plaintiff also noted that he had a history of hypertension and
8 ulcerative colitis.  The physician at Vacavalley Hospital ordered x-rays of plaintiff's lumbo-
9 sacral spine, left hip, and pelvis, and ordered other lab tests.  After the x-rays and lab test results
10 came back, the Vacavalley physician diagnosed plaintiff as suffering from an "ileosacral strain,"
11 prescribed him pain medication, and discharged him.  Plaintiff returned to Vacavalley Hospital
12 on April 19, 2009, again complaining of pain in the lower abdominal and groin area.  At that
13 time plaintiff was seen at Vacavalley Hospital and released without any report or treatment of an
14 "intestinal wall rupture."  (Defs.' SUDF 18-21, Varanini Decl., Levin Decl.)

15        On July 25, 2009, police brought plaintiff back to Vacavalley Hospital for medical
16 clearance, at which time plaintiff told emergency room personnel "my wife choked me."
17 Plaintiff was examined and cleared for re-incarceration at SCJ by medical personnel.  Upon his
18 return to the SCJ, plaintiff gave a medical history that included hypertension.  Plaintiff received
19 blood pressure checks for five days.  On July 29, 2008, plaintiff had an initial chronic care visit
20 for his hypertension and ulcerative colitis.  At the visit, plaintiff's medications were continued.
21 On August 6, 2009, as a result of an exam suggesting there was a questionable mild exacerbation
22 of plaintiff's ulcerative colitis, defendant Dr. Kadevari prescribed plaintiff prednisone.  On
23 September 1, 2009, defendant Dr. Kadevari continued plaintiff on prednisone.  (Defs.' SUDF 22-
24 26, Varanini Decl., Purcell Decl.)

25        On September 3, 2009, plaintiff saw defendant Fernandez and told the defendant
26 "my wife handles my meds."  Defendant Fernandez reviewed the medical chart and told plaintiff

9

that he was receiving the same medications listed in his Walgreen's Pharmacy records. In the following weeks, medical personnel increased plaintiff's Ultram dosage and prescribed him Vicodin for pain. In October 2009, plaintiff was transferred out of the SCJ. (Defs.' SUDF 27-33, Purcell Decl.)

II. <u>Defendants' Arguments</u>

Defense counsel argues that under the undisputed facts of this case, the defendants responded to plaintiff's medical complaints properly and effectively. In counsel's view, there is no admissible evidence before the court which supports plaintiff's claim that the named defendants responded to plaintiff's serious medical needs with deliberate indifference. (Defs.' Mem. of P. & A. at 10-12.)

**ANALYSIS**

Based on the evidence submitted in connection with the pending motion, the court finds that defendants Fernandez, Purcell, and Kadevari have borne their initial responsibility of demonstrating that there is no genuine issue of material fact with respect to the adequacy and management of plaintiff's medical care at the SCJ. Of course, in considering defendants' motion for summary judgment, the court is required to believe plaintiff's evidence and draw all reasonable inferences from the facts before the court in plaintiff's favor. However, as noted above, plaintiff has failed to file any opposition to defendants' motion and therefore has failed to submit any evidence creating a genuine issue of material fact with respect to his claim that the defendants responded to his medical needs with deliberate indifference. See <u>Farmer</u>, 511 U.S. at 834; <u>Estelle</u>, 429 U.S. at 106.

Based upon the evidence submitted in connection with the pending motion as summarized above, the undersigned finds that a reasonable jury could not conclude that defendants Fernandez, Purcell, and Kadevari were deliberately indifferent to plaintiff's medical needs in violation of plaintiff's rights under the Eighth Amendment. Plaintiff received regular medical care from defendants, who prescribed medications believed to be appropriate (including

all medication plaintiff was taking before he entered SCJ) and established a course of treatment. Moreover, the diagnosis and medical treatment plaintiff received at an outside hospital during the intervening time he was out of custody was not inconsistent with or materially different from that which he received from SCJ medical staff.

Of course, before it can be said that a prisoner's civil rights have been abridged with regard to medical care, however, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06). See also Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."); McGuckin, 974 F.2d at 1059 (same). Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835 (quoting Whitley, 475 U.S. at 319).

Delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S. at 104-05. To establish a claim of deliberate indifference arising from delay in providing care, a plaintiff must show that the delay was harmful. See Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). In this regard, "[a] prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). See also McGuckin, 974 F.2d at 1060.

Finally, mere differences of opinion between a prisoner and prison medical staff or between medical professionals as to the proper course of treatment for a medical condition do not give rise to a § 1983 claim. Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330,

11

332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).   Here, the undisputed evidence establishes, at most, a mere difference of opinion between plaintiff and the defendants as to the appropriate course of treatment for plaintiff's condition.  Such does not support a § 1983 claim.  Accordingly, the unopposed motion for summary judgment brought on behalf of defendants Fernandez, Purcell, and Kadevari should be granted.

## CONCLUSION

IT IS HEREBY ORDERED that the Clerk of the Court is directed to randomly assign a United States District Judge to this action.

IT IS HEREBY RECOMMENDED that:

1. Defendants' February 11, 2011 motion for summary judgment (Doc. No. 31) be granted; and

2. This action be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 12, 2011.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:9
hend2779.57